**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 13-cv-02111-MSK-MJW

**JERALD A. BOVINO,**

      **Plaintiff,**

**v.**

**AMAZON.COM, INC.,**

      **Defendant.**

_____

**OPINION AND ORDER CONSTRUING CLAIMS AND GRANTING MOTION FOR
SUMMARY JUDGMENT**
_____

**THIS MATTER** comes before the Court pursuant to the Defendant's Motion for

Summary Judgment (**# 52**), the Plaintiff's response (**# 55**), and the Defendant's reply (**# 57**).

Also pending is the parties' request for construction of the claims in a patent.  The parties have

filed a Joint Claim Construction Chart (**# 54**), the Plaintiff filed his opening claim construction

brief (**# 59**), and the Defendant responded (**# 60**).  Thereafter, the parties filed additional

supplemental briefs (**# 67, 69 70**).

## FACTS

According to the Amended Complaint (**# 41**), Mr. Bovino is the holder of U.S. Patent No.

6,977,809 ("the Patent"), which describes ""a portable computer having an integral case . . . to

protect the portable computer from wear and tear."  He alleges a single claim for patent

infringement against Defendant Amazon.com, Inc. ("Amazon"), based on Amazon's sale of

"cases for various versions of PC & Apple cellular phones, computers, and tablets."  More

specifically, Mr. Bovino's theory is that "Amazon's customers/persons using the cases" actually

infringe the patent, and that Amazon "causes, urges, aids, advised, encourages, and/or otherwise induces" that infringement.

Amazon moves **(# 52)** for summary judgment, arguing that: (i) the accused products do not, as a matter of law, infringe the Patent because they do not contain an integrated computer and do not contain "resilient ribs" on the exterior surface of the case; and (ii) that the Patent is invalid as obvious.

Separately, the parties have identified the claim terms in the Patent that are disputed and require construction.  The parties have filed claim construction briefs regarding the pertinent terms.

## ANALYSIS

The first portion of Amazon's summary judgment motion turns, in part, on whether the accused products have an "integrated" computer or "resilient ribs."  Thus, before the Court can consider that argument, it must first address the construction of those (and other) claims in the Patent.

### A.  Claim construction

Pursuant to *Markman v. Westview Instruments*, 517 U.S. 370 (1996), the parties request construction of as many as five terms used in the Patent.

#### 1.  Claim construction generally

The fundamental purpose of a patent is to give notice to others of that in which the inventor claims exclusive rights.  *Oakley Inc. v. Sunglass Hut International*, 316 F.3d 1331, 1340 (Fed. Cir. 2003).  Thus, the focus of claim construction is ascertaining how a reasonable competitor would interpret the actual claim language, not what the inventor subjectively intended the language to claim.  *Id.* at 1340-41.  The words used in the patent are evaluated according to

their "ordinary and customary meaning," as would be understood by a person of ordinary skill in the art at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (*en banc*). In some circumstances, the specification may reveal that the inventor specifically – albeit idiosyncratically – defined a term in a way that might differ from the meaning it would otherwise possess. Where the intrinsic record <u>clearly</u> discloses that the inventor resorted to his or her own peculiar lexicography, the Court will give effect to the inventor's unique idiom; however, where the inventor used particular words without giving a clear indication of an intent to endow them with an unusual meaning, the Court will give those words their ordinary and customary meaning in the art, notwithstanding the inventor's subjective intent to invoke a different definition. *See e.g. Laryngeal Mask Co. v Ambu*, 618 F.3d 1367, 1372 (Fed. Cir. 2010).

In attempting to give meaning to the inventor's language, the Court "looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." *Phillips,* 415 F.3d at 1314. Among those sources are: (i) the words of the claims themselves; (ii) the remainder of the patent's specification; (iii) the prosecution history of the patent; (iv) extrinsic evidence concerning relevant scientific principles; (v) the common meanings of technical terms used; and (vi) the state of the art at the time of the invention. *Id.* Terms must be construed in light of the entirety of the patent, not just the context of the particular claim(s) they appear in. *Id.* at 1313. In other words, claim language must be read in conjunction with the more general and descriptive specification portion of the patent; indeed, the specification is often "the single best guide to the meaning of a disputed term." *Id.* at 1315. Because the patent is examined as a whole, the Court assumes that claim terms will normally be used consistently throughout the patent, and thus, the meaning of a term

used in one claim can illustrate the meaning of that same term used elsewhere in the patent.  *Id.* at 1314.

As with the specification, evidence of the prosecution history of the patent can also be considered as intrinsic evidence of how the USPTO and the inventor understood the patent.  *Id.* at 1317.  The prosecution history reflects "an ongoing negotiation between the PTO and the applicant," and can sometimes demonstrate that the inventor limited or disclaimed some portion of a claim.  *Id.*  At the same time, because the prosecution history predates the final patent language, the prosecution history "often lacks the clarity of the specification and thus is less useful for claim construction purposes."  *Id.*

Extrinsic evidence of disputed terms – that is, "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises" – can also shed light on the proper construction to be given to those terms, but extrinsic evidence "in general [is] less reliable than the patent and prosecution history in determining how to read claim terms."  *Id.* at 1318.  The court in *Phillips* articulated a variety of reasons why a court construing a patent should be wary of relying too heavily on extrinsic evidence, and cautions that, while admissible and potentially probative, courts "should keep in mind the flaws inherent in each time of [extrinsic] evidence and assess that evidence accordingly."  *Id.* at 1318-19.

2.  <u>Particular claim terms</u>

With these common principles (and others that the Court has not explicitly stated) in mind, the Court turns to the terms on which the parties seek construction.  The terms discussed herein are primarily found in Claims 1 and 6, the independent claims; certain terms might be found only in dependent claims at issue, Claims 2, 4, 7, 8, and 10.   Except where the analysis

might differ from claim to claim, the Court will primarily address the disputed terms as they appear in Claims 1 and/or 6.

a. "case"

Claim 1 describes "a portable computer, comprising an openable case defining an exterior surface for holding the computer. . . ." In the parties' Joint Claim Construction Chart (#4-1), Mr. Bovino proposed that this term be construed to mean "a housing in which a portable computer resides, an integral part of the portable computer." Amazon proposed that the term be construed to mean "a housing structure inseparably connected to and enclosing the computer where the structure has at least a first section and a second section secured together to encase the computer." In their claim construction briefs, each party proffered a definition that differs from that found in the Joint Claim Chart. Amazon modified its initial phrasing of "inseparably connected" to read "inseparably and integrally connected"[1]. Mr. Bovino appears to have abandoned his initial proposed definition and instead adopted the entirety of Amazon's proposed definition, except for the phrase "inseparably and integrally." Thus, the only issue to be resolved with regard to this claim term is whether the Patent requires that the case be "inseparabl[e] and integral[ ]" to the computer.

There is little question that the Patent frequently describes the case being "integral" to the computer – several portions of the patent reference the computer having "an integral case" or state that "the case is integral with the portable computer." 2:10-11, 2:15-16, 2:42-43. Indeed, Mr. Bovino's initial proposed definition of this term described the case as being "an integral part" of the computer. "Integral" simply means "forming a single unit," with something else in contrast to being the two being "separate" parts. *See e.g. Rexnord Corp. v. Laitram Corp.*, 274

---

[1]     It also appears to have omitted both instances of the word "structure," replacing the latter with "housing." The Court does not understand this alteration to have a material significance.

F.3d 1336, 1344 (Fed. Cir. 2001) (a "portion" of an object "can connote either the quality of being 'separate' or of being 'integral'" to another object); *Vanguard Products Corp. v. Parker Hannifan Corp.*, 234 F.3d 1370, 1371 ("'integral' . . . mean[s] formed as a unit with another part"). Thus, it seems to be readily agreed by the parties that, when the computer is placed in the case, the two form a single, integral unit.

In addition, Amazon's proposed definition includes a second characteristic of the case - it must be "inseparabl[e]" from the computer. Amazon seems to simply assume that the characteristic of inseparability follows automatically from the fact that the computer and case are "integral". Beyond citations supporting the integral nature of the two components, Amazon does not offer a distinct definition of the term "inseparabl[e]" nor does it direct the Court to any portion of the Patent that suggests inseparability.

The Court does not consider "integral" and "inseparable" to be synonymous. "Inseparable" does not simply mean "not separate"; it means "incapable of being separated." Merriam-Webster's Collegiate Dictionary, 10th ed. at 603 (2001). For example, a windshield wiper consists of two components – the armature and the blade – that, when assembled, work integrally as a single unit. However, by design, those components can be separated to allow for replacement of the blade. Here, the Patent contemplates that the case, when attached to the computer, forms a single integral unit, but the patent does not suggest that the case and computer cannot be later separated. For example, the Patent does not require the computer to be glued or welded to the case, or that the fit between the computer and case is so tight that removing the computer from the case thereafter becomes impossible. Thus, the Court finds no support in the patent for a construction of the term "case" to require that the case be inseparable from the computer.

Accordingly, the Court construes the term "case" to mean "a housing integrally connected to and enclosing the computer, having at least a first section and a second section secured together to encase the computer."

b. "resilient ribs"

This term appears to be at the crux of the parties' dispute. Claim 1 requires "a plurality of resilient ribs positioned on said exterior surface of said case. . . ." Mr. Bovino's initial proposed construction of this term in the claims chart is "a deformable protrusion on the exterior surface of the case." Amazon's initial proposed construction was "elongate narrow raised ridges made of material that will return to its original form after being deformed that provide cushioning for the case and for the computer positioned in the interior of the case."[2] In Mr. Bovino's claim construction brief, he appears to abandon his initial proposed construction and to adopt almost the entirety of Amazon's construction, with the exception of the words "elongate narrow". Thus, the parties' dispute appears to concern the question of whether the "resilient ribs" described in the claims must be "elongate" and "narrow."

Although a central point of dispute for the parties, the term "ribs" (or "resilient ribs") is used sparingly in the specification. The text merely describes "a plurality of ribs" that are "positioned on the exterior surface of [the case]", made from "a resilient material such as rubber, urethane, . . . or similar products that can provide cushioning for the case." 3:1-5. The specification explains that these ribs "are disposed on the case in areas that will receive the maximum amount of wear and tear during transporting and using" the computer. 3:6-9. (The

_____

[2]     Although Amazon presents this proposed construction in table form at the beginning of this portion of its brief, it later states that it "has agreed to drop the 'elongate' limitation as part of its proposed construction to further simply matters." Thus, it is not particularly clear to the Court whether "elongate" remains in Amazon's proposed construction. It does not appear that the question of elongation necessary alters the analysis herein, and thus, the Court will occasionally use that adjective as explanatory.

specification goes on to contemplate making the entire exterior of the case out of the resilient material for greater protection, or even making the entire case out of resilient material and then adding "individual ribs of a resilient material" atop *that* for maximum protection.)

Claim 1 describes "a plurality of resilient ribs positions on said exterior surface of said case [to] protect[ ] said computer from wear and tear during . . . transporting and use." Claim 4, a claim dependent on Claim 1, adds that the ribs "are positioned on the case in locations to absorb impacts that can effect [sic] the operation or functioning of the computer." Claim 6 describes a case whose exterior is at least partially clad in resilient material, plus "a plurality of resilient ribs" such that the combination "protect the computer from wear and tear." Finally, Claim 10, a claim dependent on Claim 6, describes a situation in which "the plurality of resilient ribs extend above the resilient material on the exterior surface of the case."

As the foregoing reflects, beyond simply using the term "ribs," the Patent does not offer any meaningful intrinsic description of the shape or nature of the ribs. The Patent contains diagrams that show the ribs as seemingly narrow pinstripes on the exterior surface of a case similar to a briefcase or satchel. There is nothing in the record that would suggest that Mr. Bovino was using the term "rib" in an idiosyncratic way, different from its use in ordinary language. In the absence of any clear intrinsic definition of the term, the Court turns to extrinsic sources defining the word "rib."

First, the Court examines dictionary definitions of the word "rib." Merriam-Webster's Collegiate Dictionary defines the term as "an elongated ridge." 10th ed. at 1003 (2001). The most applicable definition in the Oxford English Dictionary is "a raised ridge on some object [or] surface." 3d ed. (2010). These definitions generally favor Amazon's proposed construction of "rib" as being elongated and narrow, like a ridge (which the Oxford English Dictionary defines

as "the top, upper part, or crest of anything, especially when <u>long and narrow</u>").  3d Ed. (2010) (emphasis added).  These authorities support the notion that the common use of the term "rib" connotes a structure that is elongated and narrow.

Next, Amazon cites to the prosecution history of the Patent.  As of January 2005, Mr. Bovino's application claimed "at least one resilient <u>strip</u>" on the exterior of the case.  (Emphasis added.)  The Patent Examiner rejected several of Mr. Bovino's claims on the basis of prior art in the form of the DiFonzo patent, U.S. Patent No. 6,262,886.  The DiFonzo patent described a portable computer that was protected against shock and vibration due to "integrally disposed translucent elastomer layers on the computer housing . . . form[ing] protective coverings for the portable computer."  In response, Mr. Bovino amended his application to claim "a plurality" (rather than "at least one") of resilient "ribs" (rather than "strips"), and the application, as amended, was approved.  Thus, Amazon argues, "ribs" differ from "strips" by being elongated and narrow rather than wide, and Mr. Bovino is precluded by the prosecution history from arguing that "ribs" have the same characteristics as "strips."  In response, Mr. Bovino does not particularly address the change in claim from "strips" to "ribs"; instead, he addresses only the irrelevant fact that he also changed "at least one" strip to "a plurality" of ribs.[3]

One can thus assume that, by changing "strips" to "ribs," Mr. Bovino was attempting to differentiate his invention from that shown in DiFonzo.  In the diagrams of the DiFonzo patent, the "elastomer layer" is depicted as a fairly wide, curving  band of rubberized material across the width of a closed laptop-type computer, covering anywhere from approximately a quarter to three-quarters of the top surface of the computer.  By recharacterizing his invention as featuring

---

[3]        DiFonzo also claimed a plurality of these strips.  Claim 1 of that patent claimed a case having "a <u>first</u> translucent elastomer layer [*i.e.* rubberized strip]" and a "<u>second</u> translucent elastomer layer" each disposed on a different portion of the case.  (Emphasis added).  Claim 4 of that patent referenced a "<u>third</u> translucent elastomer."  (Emphasis added).

"ribs" rather than "strips" to differentiate it from DiFonzo, Mr. Bovino certainly was not attempting to claim "ribs" that were <u>wider</u> than the "strips" shown in DiFonzo, given that those strips came close to covering the entirety of the top surface of the computer at some points. Thus, one must assume that, through the use of the term "ribs," Mr. Bovino was attempting to claim a feature that was <u>narrower</u> than the strips shown in DiFonzo.

Taken as a whole, both the intrinsic (illustrations) and extrinsic evidence (dictionary definitions, prosecution history) are consistent with the notion that the term "rib" was intended to convey a structure that was elongated and relatively narrow. Accordingly, the Court finds that the appropriate construction of the term "resilient ribs" is that proposed by Amazon: "elongate narrow raised ridges made of material that will return to its original form after being deformed that provide cushioning for the case and for the computer positioned in the interior of the case."

### c.  "positioned on"

This claim was not originally proposed for construction in the parties' joint claim chart, but Mr. Bovino's claim construction brief included it. Amazon moved to strike that portion of the brief, but the Court denied that request, allowing both sides to supplement their briefing to address the term.

The term "positioned on" is used in both Claim 1 and Claim 6 (and in various dependent claims) to describe the "resilient ribs positioned on [the] exterior surface of [the] case." Mr. Bovino proposes that "positioned on" be construed to mean "placed in connection on either side of [the exterior surface]." Amazon does not propose a construction of this term, believing that the term is self-defining.

Mr. Bovino's contention seems to be that the exterior surface of a case (be it a briefcase, computer case, or even a suitcase) has two sides – the outside surface and the underside of that

surface.  It appears that he argues that ribs would be "positioned on" the exterior surface of the case even if those ribs are affixed on the underside of the exterior surface – *e.g,* inside of the case in a location between the underside of the exterior shell and any interior lining or additional interior surface.

The Court rejects this argument.   An item can have only one "exterior surface" on which ribs can be positioned – that is, the surface that is visible when the case is closed.  The suggestion that the <u>underside</u> of the exterior of a case is an "exterior surface," even in a case constructed of multiple layers, does violence to the meaning of the term "exterior."  By that logic, one would be advised to use "exterior" paint when painting the inside foundation walls of a home simply because those walls are the obverse of the "exterior surfaces" of the house.   The plain language of the phrase "positioned on the exterior surface" yields a conclusion that the ribs must be located on the outermost surface of the case, and Mr. Bovino has not articulated any reason why a person skilled in the art would interpret that phrase differently.  Certainly the Patent's illustrations depict the ribs positioned on the exterior surface of the case and nothing in the specification hints at the unique definition Mr. Bovino now offers.  Accordingly, the Court construes the phrase "positioned on [the] exterior surface" to mean "located on the outermost surface" of the case.

### d.  "protects"

Claim 1 requires that the resilient ribs "protect [ ] said computer from wear and tear during transporting and use."  (Claim 6 provides similarly, although the "protect[ion]" there is provided by the combination of the resilient surface of the case plus the ribs.)  Mr. Bovino proposes that the term "protects" be construed to mean "helps to minimize wear and tear."  Amazon contends that no particular construction is required, but proposes that if a construction is

warranted, it should be "absorbs shock and prevents wear and tear beyond that provided by the case itself."

The specification explains that a case of the type described is desirable in two situations: (i) "when it is necessary to transport" the computer, and (ii) "to protect the portable computer from levels of wear and tear that are not normally encountered when using" the computer. 1:20-23. In such circumstances, the ribs (or the combination of resilient surface plus ribs) "provide cushioning for the case" and "shock absorption." 3:8-11, 3:16-19.

The Court rejects, in part, both parties' proposed construction. Mr. Bovino's limits the scope of the claimed protection to "minimiz[ing] wear and tear," ignoring that a stated purpose of the invention is to also offer protection during transportation, where the need for "shock absorption" is significant. At the same time, Amazon's construction is also undesirable. For one thing, it is somewhat grammatically-awkward – the verb "provided" seems to couple the nouns "wear and tear" and "case," suggesting that it is the case providing the wear and tear in question. Amazon's intended meaning seems to be that the ribs must provide supplemental protection against shock and wear, over and above the level of protection from those hazards that an ordinary, un-ribbed case would provide. Amazon's position might be cognizable if the resilient ribs were, themselves, the novel component of the invention. But it is clear from the specification that the novel feature of the invention is that the case is integral with the computer. The ribs are presented as an alternative or supplement to "a layer of padding or other protective material in the interior of the protective case." In other words, the Patent does not necessarily promise a case that is more protective than an ordinary case, it merely describes a case whose protection is derived from the use of resilient ribs.

Accordingly, the Court finds that the phrase in question needs no particular construction, beyond amending the phrase "protects said computer from wear and tear" with "and shocks."

e. "during the transporting and use of the computer"

Claims 1 and 6 provide that the protection against wear and tear above is offered "during the transporting and use of the computer." Mr. Bovino proposes that this phrase be construed to mean a first time period when the computer is being transported, and a second time period when the computer is being operated." Amazon proposes that the phrase be construed to mean "a time period when the computer is being carried by a used and the case is closed, and another time period when the computer is being operated by a used and the case is open."

Mr. Bovino's proposed construction is merely a restatement of the claim term itself. (This is not intended as a criticism. The phrase is not particularly unclear and thus, really requires no particular construction.) Amazon's proposed construction is beset with assumptions that are not supported in the Patent. Amazon assumes that transporting will necessarily occur when the case is closed, but there is no apparent basis for that conclusion. A user could conceivably be "transporting" a computer and "using" it at the same time – *e.g.* having a video chat while riding a bus or carrying the computer to a co-worker's office to show a webpage. The case design could, at least theoretically, offer some protection for the computer even when opened, assuming the impact occurred in certain places. Thus, because the Patent does not necessarily compel the assumptions embedded in Amazon's proposed construction, the Court declines to adopt it.

To the extent a construction of this phrase is needed, the Court adopts a slightly modified version of Mr. Bovino's: the phrase "during the transporting and using" the computer means "a time period when the computer is being transported and/or is being used."

f.  "effect the operation or functioning of the computer"

Finally, Claim 4 describes a case as set forth in Claim 1, plus the additional feature in which the ribs are positioned on the case in locations to absorb impacts "that can effect [sic] the operation or functioning of the computer."  Mr. Bovino contends that this phrase should be construed to mean "any detrimental physical deterioration from a scratch on a screen to a broken electronic circuit."  Amazon proposes that the phrase be construed to mean "cause the computer to malfunction or otherwise not operate properly."

Outside of Claim 4, the terms "operation" of "functioning" do not appear anywhere in the Patent.  Nor does the Patent discuss the types of "impacts that can [a]ffect" such operation or functioning or identify the locations on the case where purposeful placement of the ribs can have such a protective effect.  Claim 1 describes placing the ribs to protect the computer against "wear and tear during transporting and use."  The doctrine of claim differentiation thus requires that Claim 4 describe something that Claim 1 does not already provide.  As such "effects [on] the operation and functioning of the computer" must be something other than "wear and tear."  A computer's "operations" or "functions" would seem to consist generally of the tasks of receiving input, processing data, and rendering output.  Purely cosmetic damage, such as screen scratches, do not prevent a computer from operating or functioning correctly.  Thus, Mr. Bovino's proposed construction – "any detrimental physical deterioration," including "a scratch on the screen" – would appear to encompass ordinary "wear and tear," improperly duplicating Claim 1.

Accordingly, the Court adopts Amazon's proposed construction.  Impacts which "[a]ffect the operation or functioning of the computer" are those which "cause the computer to malfunction or otherwise not operate properly."

### B. Motion for Summary Judgment

Having construed the patent, the Court can now turn to Amazon's motion for summary judgment.

### 1. Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th

Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).  If there is a genuine

dispute as to a material fact, a trial is required.  If there is no genuine dispute as to any material

fact, no trial is required.  The court then applies the law to the undisputed facts and enters

judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence

of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove.

If the respondent comes forward with sufficient competent evidence to establish a *prima facie*

claim or defense, a trial is required.  If the respondent fails to produce sufficient competent

evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of

law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

2.  Whether the accused products infringe

Amazon argues that, as a matter of law, the accused products are non-infringing for two

reasons: (i) the Patent claims "a computer comprising . . .  a case," such that the accused products

must include a computer as part of their design, which the accused products do not; and (ii) that

the accused products do not have "resilient ribs" positioned on their exterior.

a.  presence of a computer

Claims 1 and 6 of the Patent, the two independent claims at issue here, claim "a portable

computer comprising an openable case" with certain features.  Amazon argues that any

infringing product must therefore include both a case and a computer.  It is undisputed that the

accused products – foldable cases for tablet computers – do not include the tablet computers

themselves.  Mr. Bovino appears to implicitly concede this point (or, if he does not, he should),

as the accused products are merely cases, not accompanied by computers.  But Mr. Bovino

argues that the cases, of themselves, reflect Amazon's contributory infringement.

Contributory patent infringement occurs when a defendant "sells . . . a component of a patented machine . . . constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. §271(c).  To establish this claim, Mr. Bovino must show: (i) that some person or entity is engaging in direct infringement of the Patent, (ii) that Amazon had knowledge of the Patent, (iii) that the accused component is a material part of the patented invention; and (iv) that the accused component has no substantial noninfringing uses.  *Fujitsu, Ltd. v. Netgear, Inc.*, 620 F.3d 1321, 1226 (Fed. Cir. 2010).  As the Court understands the briefing, Amazon's challenge is directed at only the first element – whether use of the accused products by another would constitute direct infringement.

Direct infringement occurs when a person "uses . . . any patented invention."  35 U.S.C. § 271(a).  Thus, the consumer who obtains both a tablet computer and one of the accused products, then uses them together to create an integrated case-and-computer assembly, arguably engages in direct infringement of the Patent.

Amazon argues that a consumer's use of the accused cases with tablet computers would not constitute direct infringement because the case and computer are never "integrated," based on Amazon's argument that integration of the products requires some degree of inseparability. *Docket* # 57 at 5 ("It is undisputed in this case that the Accused Products are merely accessory cases, and not inseparable from the devices they protect").   However, as discussed above, the Court does not construe the term "integral" in the Patent to require that the case and computer become inseparable; all that is necessary is that, when used together, the case and computer operate as a single unit.  The record includes several physical samples of the accused products

(although not the accompanying tablet computers).[4]  It is evident that the computers are attached to the cases by means of tabs (on the AceAbove product, and possibly on the Fintie and Invellop products), pockets (on the Case Crown product), or some other means.  By all appearances, once attached, the computer and case are integrated, such that one can lift or move the computer simply by lifting or moving the flap of the case or (with enough fine motor skills) one could lift or move the case by lifting or moving the computer itself.  Thus, there is at least a genuine dispute of fact as to whether the accused cases, when used with tablet computers, become one integral unit such that a consumer's use of the case would constitute a direct infringement of the Patent.

### b. resilient ribs

Amazon's second argument is that none of the accused products infringe the patent, directly or contributorily, because they do not have "resilient ribs" on the "exterior" of the case.

Both Claims 1 and 6 require that the case possess "a plurality of resilient ribs positioned on the exterior surface of the case."  Both claims require that these resilient ribs "protect [the] computer from wear and tear."

---

[4]      Although the Amended Complaint identifies 99 separate accused products, manufactured by 61 different entities, Mr. Bovino provides physical samples of only 4 of the accused products. *Docket* # 57, Ex. P & # 58.  Amazon's motion provides fairly low-resolution black and white photographs of certain other cases, although it is often difficult to ascertain the pertinent features in such photos.  Mr. Bovino's response reproduces approximately 10 of the photos in color and in slightly higher resolution.  Given that it is Mr. Bovino's burden on summary judgment to come forward with evidence that establishes his contentions, the Court will limit its analysis to the photos and physical samples addressed in Mr. Bovino's response.

Nearly all of the accused products take the same form – a two-part, vertically-hinged case somewhat resembling the covers of a book:



(This image shows the case opened and positioned interior side-down, showing the exterior surfaces of the case. The interior socket for placement of the computer is not shown.)

When the case is opened, the leaf on the right side (denoted in the image as 2, 3, and/or 6) contains a socket for installation of the tablet computer.  Because that leaf holds the computer, it is often a single, rigid piece (although some cases include various structures on or within that leaf). The left-hand leaf is often[5] divided into several, narrower, parallel panels (denoted in the

---

[5]       This is not always the case.  The AceAbove case has an undivided left-side leaf.  The rear of its right-side leaf has a groove running down its center, but this appears to be purely cosmetic. Moreover, in the tactile sense, this right-side leaf – made of a rigid material with a leathery outer skin – does not appear to be made of any material that could fairly be called "resilient."

image as 4, 5, and/or 7) joined together by hinges (denoted as G).  Being linked by depressions that act as hinges, the panels (and thus, the left-side leaf itself) can be folded into various configurations.  Mr. Bovino offers two distinct arguments: that the parallel panels themselves are the "resilient ribs" claimed by the Patent and, alternatively, that the "hinges" between the parallel panels are "ribs."

Mr. Bovino argues that the parallel panels in the left-hand leaf constitute the "resilient ribs" claimed in the Patent.  This contention is unpersuasive for two separate reasons.  First, these panels are not "raised."  As the preceding claim construction discussion establishes, both parties and the Court agreed that a characteristic of "ribs" is that they are "raised ridges."  By definition, then, the "ribs" must rise up above the surface plane of the case's exterior.  Here, the panels in question <u>define</u> the case's exterior surface, and thus, do not rise above it.

Mr. Bovino attempts to elide this difficulty by changing the frame of reference: he contends that it is the narrow grooves between the panels that are the actual "surface" of the case, and thus, the panels rise above that plane.  The Court finds that no reasonable person would define the surface plane of the case by reference to the depressed grooves rather than the panels that make up the vast majority of the surface[6]; put more simply, reasonable people would agree that the surface of the accused products contains recessed grooves, not elevated panels.[7]

---

[6]    Notably, the panels occupy the overwhelming majority of the surface area of the left-side: for example, on the Fintie case, the physical sample with the widest grooves (and thus, the design most favorable to Mr. Bovino), the three panels with widths of 2", 2.25", and 1.5" wide separated by two grooves each of which are .25" wide.  Thus, of the 6.5" wide left-side, the panels account for approximately 88% of the surface area, with the remainder being recessed grooves that act as hinges.

[7]    On several of the accused products, the left-side leaf of the closed cover offers only the merest suggestion of a groove.  Of the physical exhibits, as presented, fresh out of its packaging, the Case Crown product reveals an almost uniformly-flat surface when closed; the single groove reveals itself only upon flexing the cover or upon some probing.  (The groove may become more

But even if a reasonable person could conclude that the panels in question are indeed "raised" above the surface of the case, Mr. Bovino's contention that those panels constitute "ribs" fails because the Court has previously construed the term "ribs" to necessarily require that the panels be "narrow." As exemplified by Mr. Bovino's revision to his claims to avoid the DiFonzo patent's wide strips of rubberized material, Mr. Bovino's "resilient ribs" must necessary be narrow structures. As noted above, even on the Fintie case – the physical sample most favorable to Mr. Bovino's argument – the panels in question each occupy approximately a third of the surface area of the left-side of the case. Although the term "narrow" may be interpreted differently by different individuals, the Court finds that no reasonable person could characterize these panels as being "narrow," particularly in contrast with the much narrower grooves between them. The same appears to be true of the cases shown in photographs in Mr. Bovino's brief: with the possible exception of a single structure in the photograph labeled "CBG B004CG4SLU" (the structure denoted by the second "7" from the left edge of the photo), all of the structures labeled by Mr. Bovino as being "ribs" are, at least visually, comparatively wide portions of the cover when contrasted with the narrow grooves of the hinges.

Accordingly, the Court finds that Mr. Bovino has not carried his burden of coming forward with evidence sufficient to demonstrate a triable question of fact as to whether any of the

---

pronounced with extensive use and flexing of the leaf, however.) The Invellop case is similarly designed to appear to be an unbroken flat surface.

Turning to the photos in Mr. Bovino's brief, the case labeled "Triline" is marked as having only a single groove, and that is quite clearly the hinge connecting the case's left-side and right-side panels; the left-side leaf itself appears to be a single, undivided slab. Because the hinge is necessary to define the case – that is, to separate the first and second sections of it, it cannot simultaneously be the feature that creates "resilient ribs" on what is an otherwise smooth left-side leaf. Similarly, the case labeled "XKTtsueercrr B00EB8Y404" is marked as having two structures identified as "grooves." One is clearly the hinge connecting the two halves of the case together, as with the Triline case. The other appears to be a hinge connecting the surface of the case to an otherwise detached flap that, when opened, provides a stand for the case. Neither appears to be a structure that otherwise operates to define a plurality of raised ribs on the exterior of the case..

accused products can be said to have a plurality of "resilient ribs," as the Court has construed

that term.  Such ribs are a necessary component of all of the Patent claims at issue here, and thus,

this failure entitles Amazon to summary judgment on Mr. Bovino's infringement claim(s).

### 3.  Remaining contentions

Because the Court finds that Mr. Bovino has not adequately shown a colorable claim that

any of the accused products infringe the Patent, the Court need not consider Amazon's

alternative argument that it is entitled to summary judgment on its affirmative defense that Mr.

Bovino's Patent is invalid as obvious.[8]

---

[8]      Were it to do so, the Court would likely find that the Compaq patent, cited by Amazon, does not itself anticipate Mr. Bovino's patent, in that the "ribs" described in the Compaq patent are intended to elevate the case above a flat surface like a table, not to provide protection and cushioning as in Mr. Bovino's patent.  Amazon's argument that a reference to use of a resilient material on an interior feature of the case is transferable to the description of the supportive ribs on the bottom of the case misconstrues both the structure that the Compaq patent describes as being "soft and yieldable" (a cushioned handrest on the interior of the case) and the stated supportive purpose of the Compaq patent's ribs – making them deformable with a resilient material would defeat their purpose of providing support.

However, the Court would be more receptive to an argument of invalidity based on a combination of the Compaq patent (disclosing an integral hinged case for a portable computer) and the Moncrief patent (disclosing a "lidless enclosure" for a computer consisting of a sort of tub, made of resilient material and containing a plurality of protective ribs on the exterior of the case).  Indeed, in many ways, the Moncrief patent is distinguished from Mr. Bovino's patent only insofar as the Moncrief design, lacking an upper lid, does not completely encase the computer when the case is closed.   One could readily recognize that extending the design of the Moncrief patent to include a hinged lid that completely encased the computer would account for the entirety of Mr. Bovino's claims.

## CONCLUSION

For the foregoing reasons, the Court construes Mr. Bovino's Patent as discussed herein.

Amazon's Motion for Summary Judgment (**# 52**) is **GRANTED.**  The Clerk shall enter

judgment in favor of Amazon on all claims in this action, and close this case.

Dated this 1st day of June, 2015.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge